UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY KNIGHT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-00229-JHE |
| ) | |
| DANDY RV SUPERSTORE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Pending before the Court are motions to dismiss by Defendants Dandy RV Superstore, Inc. ("Dandy RV"), Camping World, Inc. ("Camping World"), and Forest River, Inc. ("Forest River"), (docs. 3 & 4); evidentiary objections to those motions by Plaintiffs Terry and Pamela Knight ("Plaintiffs" or "the Knights"), (doc. 7); a motion by the Knights to compel arbitration, (doc. 8); and a motion by Defendants to stay consideration of the Knights' motion to compel arbitration, (doc. 19).  For the reasons stated below, the undersigned finds Plaintiffs' motion to compel arbitration, (doc. 8), is due to be **GRANTED** and Defendants' motion to stay, (doc. 19), is due to be **DENIED**.  Therefore, the undersigned does not address the remaining motions at this time and **STAYS** this case pending arbitration.

### I. Factual and Procedural Background

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 16).

The Knights initiated this action on December 17. 2015, in the Circuit Court of Jefferson County, Alabama, alleging violations under the Magnuson-Moss Warranty Act as well as state law breach of warranty, negligence, breach of contract, and fraud claims, all arising out of the purchase of a Forest-River-manufactured recreational vehicle from Dandy RV. (Doc. 1-1 at 12-32). Forest River, with the consent of all other defendants, removed this case to federal court on February 8, 2016. (Doc. 1). Along with its notice of removal, Forest River attached what it stated was a "true and correct copy of the Bill of Sale between Dandy R.V. and Pamela Knight," (doc. 1 at 5). (Doc.1-3). This bill of sale contained a document entitled "Alternative Dispute Resolution Agreement By Binding Arbitration" signed by the Knights and Dandy RV. (*Id.* at 4). All three Defendants moved to dismiss. (Docs. 3 & 4).

On March 16, 2016, along with their response in opposition to the motions to dismiss and an evidentiary objection to those motions, (docs. 7 & 9), the Knights filed a motion to compel arbitration pursuant to 9 U.S.C. § 3. (Doc. 8). In support of this latter motion, the Knights argued they had learned of the existence of the arbitration agreement at the time of the action's removal. (*Id.* at 2). Defendants responded by moving to stay consideration of the Knights' motion to compel, but offered no other opposition to the motion. (Doc. 19).

## II. Analysis

Defendants "take no position on Plaintiffs' motion to compel" and urge the Court to consider their motions to dismiss prior to determining whether the arbitration agreement should be enforced. (Doc. 19 at 3-4). In support of this, they cite principles of efficiency, the inherent power of the court to manage its own docket, and, generally, that sending the dispute to arbitration would unfairly give the Knights a second opportunity to present their claims. (*See id.*) Plaintiffs, by

contrast, argue to proceed as Defendants suggest would give Defendants the opportunity to "win as much as they can early and arbitrate the rest." (Doc. 21 at 2).

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, (the "FAA"), evinces "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Under the FAA, a court confronted with an enforceable arbitration agreement must stay the case and refer the matter to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration

9 U.S.C. § 3. The stay is mandatory, precluding the exercise of discretion by a district court. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court *must* grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.") (emphasis added).

Defendants' arguments the undersigned should consider their motions to dismiss first are unconvincing in the face of this mandate, which would be toothless if a district court could simply choose to postpone consideration of a motion to compel arbitration until after it resolved dispositive motions. Defendants point to no authority supporting their position beyond affirmations of a court's general power to manage its docket. While the Court does control its own

docket, and can certainly consider motions in the order it deems most appropriate, it would be unreasonable to use this inherently discretionary power to sidestep a statute that deprives the Court of discretion.

Nor do Defendants' other arguments hold water. They observe throughout their motion enforcing the arbitration agreement would result in duplicative efforts and, generally, be inefficient. However, efficient resolution of claims is immaterial to whether an arbitration agreement should be enforced. *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S. Ct. 927, 939, 74 L. Ed. 2d 765 (U.S. 1983), *superseded by statute on other grounds* (resolution of claims in different forums compelled by enforcement of arbitration agreement; the Arbitration Act "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). Notwithstanding there might be a more efficient—or at least speedy—outcome if the undersigned concluded in this proceeding some or all of the Knights' claims could not withstand scrutiny under Rule 12(b)(6), the Court is not free to interpose its own (or Defendants') ideas of economy between the parties and arbitration. And while arbitration may give the Knights a second opportunity to argue their claims, those claims are not, as Defendants imply, already disposed of such that they would be "revived" by sending them to arbitration.[2]

Thus, the undersigned will consider the motion to compel arbitration.

---

[2] Also implied in Defendants' motion through their choice of supporting authority is the argument the Knights have waived the right to seek arbitration. (*See* doc. 19 at 3, 5 (citing *Joca-Roca Real Estate LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014)). However, such an argument would be in direct opposition to the relief sought by the Knights, and thus would contradict Defendants' stated position on the motion. The undersigned will not read a challenge to the Knights' right to compel arbitration into Defendants' motion when they specifically deny they are making such a challenge.

**A. Enforceability of the Arbitration Agreement**

As noted above, Defendants take no position on whether the motion to compel arbitration should be granted. Therefore, the motion is unopposed. Still, the undersigned examines the agreement to determine whether the Knights are entitled to the relief they seek.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Thus, the Court looks to Alabama law to determine whether an enforceable arbitration agreement exists. Under Alabama law, there are two requirements for a valid arbitration contract: "(1) there must be a written agreement calling for arbitration and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997).

Here, it is clear there is a written arbitration agreement. As to the second prong of the inquiry, by its terms the arbitration agreement states

> [t]hat the [RV] was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; has been traveling in interstate commerce; the manufacture, sale, lease and use thereof has been and will continue to be regulated by laws of the United States of America; and, that the contract(s) entered into by the parties this date evidence transactions involving commerce.

(Doc. 8-1).[3] The undersigned is satisfied, and expressly finds, this provides a sufficient nexus to interstate commerce. Absent argument or evidence to the contrary, the undersigned finds the agreement is enforceable.

---

[3] This paragraph of the arbitration agreement is followed by an exception for "Tiffin Motor Homes Manufactured in Red Bay, Alabama." (*Id.*). While it is not entirely clear whether

5

The Knights assert all their claims fall within the scope of the arbitration agreement. (Doc. 8 at 3). The agreement provides:

> [I]n the event of any dispute(s), arising under or relating to the terms of the said contract(s), including but not limited to, the terms of any agreement(s), the condition of the property leased or sold, the conformity of the property sold to the contract, the representations, promises, undertakings or covenants made by the Dealer in connection with the sale of the property, or otherwise dealing with the property; all terms, promises and agreements concerning financing in connection therewith; all terms, promises and agreements of any extended service agreement or warranty; and, all terms, promises and agreements concerning any credit life and/or disability insurance purchased simultaneously herewith[.]

(Doc. 8-1). In addition to the apparent facial applicability of the arbitration agreement to the Knights' claims, the arbitration agreement provides a dispute arising under it will be submitted "according to the Commercial Rules of the American Arbitration Association then existing in the county in Alabama where the sale/lease is consummated." (Doc. 8-1). Therefore, to the extent a question may arise as to the arbitrability of the Knights' claims, that determination is left for the arbitrator. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship,* 432 F.3d 1327, 1332 (11th Cir. 2005) (incorporation of AAA Rules into agreement leaves question of arbitrability of claims for arbitrator). Therefore, the motion to compel arbitration is due to be granted as to all claims against Dandy RV, the signatory to the agreement.

### B. Applicability of Arbitration Agreement to Forest River and Camping World

Having concluded the arbitration agreement is enforceable and due to be enforced against Dandy RV, the undersigned must determine whether it is also enforceable against Forest River and Camping World, who are nonsignatories to the agreement. The Knights assert they are entitled to

---

this is meant to modify the entire paragraph or simply the first line involving the location of manufacture, the exception does not appear to be implicated by the RV in this case.

enforce the agreement not just against Dandy RV, with whom the agreement was made, but also against Forest River and Camping World; this, they say, is because the claims against the two nonsignatories are "intimately intertwined with" their claims against Dandy RV. (Doc. 8 at 6). Thus, they contend the doctrine of equitable estoppel compels Forest River and Camping World to arbitration along with Dandy RV. As with the remainder of the Knights' motion, Defendants take no position on this argument. Thus, the undersigned treats it as unopposed.

State law resolves whether an arbitration contract is enforceable against a nonsignatory. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009). Under Alabama law, one situation in which a nonparty can be compelled to arbitration is when there is "intertwining"; "'intertwining' applies 'where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.'" *Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 F. App'x 585, 590 (11th Cir. 2015) (quoting *Jenkins v. Atelier Homes, Inc.,* 62 So. 3d 504, 512 (Ala. 2010)). Although the Knights point to no specific facts supporting their contention the claims against the nonsignatories are intertwined with their claims against Dandy RV, the undersigned observes Plaintiffs' complaint asserts Camping World is the successor in interest to Dandy RV, (doc. 1-1 at ¶ 23), and Forest River's warranty, (doc. 3-2 at 2), is plausibly within the scope of the arbitration agreement. Since the nonsignatory Defendants do not oppose the motion, and it appears there is at least some basis for equitable estoppel through intertwining, Forest River and Camping World are also compelled to arbitration.

### III. Conclusion

For the foregoing reasons, Defendants' motion to stay consideration of Plaintiffs' motion to compel arbitration, (doc. 19), is **DENIED**. Plaintiffs' motion to compel arbitration, (doc. 8), is

**GRANTED**.  This case is **STAYED**, and the parties are **ORDERED** to report back to the Court on the progress of arbitration **every six months** from the date of this order.

DONE this 16th day of March, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE